# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Polaroid Corporation, | BKY No. 08-46617 |
| Debtor. | |

| | |
|---|---|
| PNY TECHNOLOGIES INC., | Civil No. 14-754 (JRT) |
| Appellant, | |
| v. | **MEMORANDUM OPINION AND ORDER VACATING THE ORDER OF THE BANKRUPTCY COURT** |
| POLAROID CORPORATION, | |
| Appellee. | |

David J. Adler, **MCCARTER & ENGLISH LLP**, Four Gateway Center, 100 Mulberry Street, Newark, NJ  07102; and Robert T. Kugler, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN  55402, for appellant.

John R. Stoebner and Ralph V. Mitchell, Jr., **LAPP LIBRA THOMSON STOEBNER & PUSCH, CHARTERED**, 120 South Sixth Street, Suite 2500, Minneapolis, MN  55402, for appellee.

This matter arises out of the bankruptcy proceedings of Debtor Polaroid Corporation ("Polaroid").  Appellant PNY Technologies, Inc. ("PNY") submitted a proof of claim in the amount of $686,837.57 in the bankruptcy proceeding seeking payments related to its prior business relationship with Polaroid.  John R. Stoebner as trustee of the bankruptcy estates of Polaroid ("Trustee") objected to this claim.  At an initial hearing on the Trustee's objections, PNY requested discovery related to documents it believed would prove its entitlement to the amounts claimed in its proof of claim.  The Bankruptcy

Court later concluded that discovery on the Trustee's objections was unnecessary and granted summary judgment in the Trustee's favor, disallowing $575,123.97 of PNY's claim. The Bankruptcy Court concluded that this amount of PNY's claim sought certain costs related to deductions, for which PNY bore sole responsibility pursuant to the business relationship between PNY and Polaroid, and therefore could not recover from Polaroid. The Bankruptcy Court concluded that discovery on the claims was unnecessary because any documentation demonstrating PNY's entitlement to the $575,123.97 should be in PNY's possession. PNY then brought a motion for reconsideration, which the court also denied.

The matter is now before this Court on PNY's appeal from the Bankruptcy Court's grant of summary judgment in the Trustee's favor with respect to the $575,123.97 of deductions sought in PNY's claim. PNY also appeals from the Bankruptcy Court's denial of its motion for reconsideration. Because the Court concludes that the Bankruptcy Court abused its discretion in refusing to allow PNY the opportunity to conduct discovery prior to the entry of summary judgment, the Court will vacate the Bankruptcy Court's summary judgment order and remand for further proceedings to allow PNY to conduct limited discovery to support its claim.

## BACKGROUND

### I.   PROOF OF CLAIM

On February 20, 2009, PNY filed a proof of claim against Polaroid in the bankruptcy proceeding in the amount of $686,837.57. (Appellant's Br., Exs. 1-2

("App.") at 7-14, Apr. 1, 2014, Docket No. 13.)[1]  On October 5, 2009, PNY filed a duplicate proof of claim in the same amount, noting that the proof of claim was "already filed" but it was being resent due to the fact that the bankruptcy proceeding had changed from a Chapter 11 to a Chapter 7 proceeding.  (App. at 15-21.)  The Court will refer to the two proofs of claim collectively as PNY's proof of claim.

PNY's proof of claim is related to two contracts entered into between Polaroid and PNY.  The first contract was a Brand License Agreement ("the BLA") entered into on July 18, 2006.  (App. at 514-43.)  Under the BLA, Polaroid agreed to allow PNY to utilize the brand name, trademarks, trade dress and logos of the Polaroid enterprise on certain consumer merchandise that was manufactured and/or sold by PNY.  (App. at 514-15.)  Polaroid and PNY entered into the second contract – a Support Services Agreement ("the SSA") – on April 6, 2007.  (App. at 27-37.)  Under the SSA, Polaroid agreed to use the Polaroid enterprise's established vendor-retailer relationship with the Target Corporation ("Target") to place PNY-produced goods with that retailer.  Specifically, the SSA acknowledges that the parties are already signatories to the BLA, and that they "are desirous of entering into this Services Agreement to provide for the rights and responsibilities of each of them with regard to a specific sales opportunity involving certain PNY products bearing the Polaroid brand."  (App. at 27.)

---

[1] PNY filed a two-volume appendix as attachments 1 and 2 to its brief at Docket Number 13.  The appendix is consecutively paginated, and references to the appendix in this Order will be to that pagination.

The SSA provides the following steps involving Polaroid's involvement: (1) Polaroid will accept purchase orders from Target for specific PNY products; (2) within two days of receipt of the purchase order, Polaroid is to create and transmit a corresponding purchase order to PNY; (3) Polaroid, upon receipt of confirmation that PNY has shipped the goods to Target, will invoice Target for the cost of those goods; and (4) upon receipt of payment from Target, Polaroid will remit the same, minus a service fee, to PNY.  (App. at 28.)[2]

Under the SSA, PNY is "solely responsible for any situations, risks, liabilities, and claims relating to charge backs, price protections and discounts, marketing development fees, late or incomplete shipments, returns, recalls, consolidation fees and charges, and similar risks relating to or arising from the sale of the Products to [Target]" and "solely responsible for all return goods, shipping charges, shipping discrepancies, or goods that are returned for any reason."  (App. at 29.)

In its proof of claim filed in the bankruptcy proceedings, PNY sought a total of $686,837.57, including $111,713.60 for unpaid invoices under the SSA and $575,123.97

---

[2] In its briefing on appeal the Trustee has identified Polaroid Consumer Electronics, LLC – a different entity associated with the Polaroid enterprise that was not a signatory to the SSA – as being the entity that actually carried out Polaroid's obligations under the SSA.  But the Bankruptcy Court determined that Polaroid – as the signatory to the SSA – was the proper party against which to seek recovery under the SSA, (Bankr. Transmittal I, Ex. 7 at 18-21, Mar. 18, 2014, Docket No. 4) and the parties have not disputed this finding on appeal.  Accordingly, the Court recites the facts related to the SSA – and the obligations contained within it – as they relate to Polaroid, regardless of whether Polaroid Consumer Electronics, LLC actually performed the actions at issue during the course of the parties' agreement.

in "deductions" for advertising, price protection, price variance, return difference, rebate, short shipment, violations, and miscellaneous expenses.  (App. at 8.)

## II.     THE ADVERSARY PROCEEDING

In December 2010, after PNY had filed its proof of claim in the bankruptcy proceeding, the Trustee commenced an adversary proceeding against PNY.  (Bankr. Transmittal II, Ex. 1, Mar. 18, 2014, Docket No. 7.)  In the adversary proceeding, the Trustee alleged, among other things, a claim for breach of contract arguing that PNY had failed to pay Polaroid royalty payments due under the BLA, (*id.*, Ex. 1 ¶¶ 19-26), in the amount of $472,946.93 (*id.*, Ex. 8 at 5).  The Trustee also sought to disallow PNY's claim in the bankruptcy proceeding until PNY satisfied its liability in the adversary proceeding.  (*Id.*, Ex. 1 ¶¶ 27-29.)

On May 10, 2011, the Trustee and PNY filed cross motions for summary judgment on the breach of contract claim in the adversary proceeding.  (*Id.*, Exs. 7-8.) On June 3, 2011, after filing its motion for summary judgment, PNY served discovery requests on the Trustee in the adversary proceeding.  (App. at 166-94.)  PNY requested, among other documents:

> Any and all documents relating to communications and/or correspondence between Polaroid and Target regarding the purchase of products pursuant to the Support Services Agreement.
>
> Any and all documents relating to communications and/or correspondence between Polaroid and Target regarding the payment for products purchased by Target pursuant to the Support Services Agreement.
>
> Any and all documents relating to communications, correspondence, discussions and/or negotiations between Polaroid and Target regarding

amounts due and owing for good[s] supplied to Target pursuant to the
Support Services Agreement.

(App. at 180-81.)  Answers to these requests were due July 5, 2011.  (App. at 167.)[3]  But

the Trustee never responded to the requests.   A hearing was held on the summary

judgment motions on June 22, 2011.  (Bankr. Transmittal II, Ex. 16 at 2; Bankr. Tr.,

Mar. 18, 2014, Docket No. 9.)

## III.   OBJECTIONS TO PROOFS OF CLAIM

On June 21, 2011, the day before the summary judgment hearing in the adversary

proceeding, the Trustee brought a motion objecting to PNY's proof of claim in the

bankruptcy proceeding.  (Bankr. Transmittal I, Ex. 4, Mar. 18, 2014, Docket No. 4.)  The

Trustee objected to PNY's proof of claim on four grounds: (1) PNY filed duplicate

claims; (2) PNY was not owed the amount requested in its claims; (3) if PNY had any

claim it was against Debtor Polaroid Consumer Electronics, LLC not Polaroid; and

(4) PNY's claims, if any, should not be allowed until PNY satisfied its liability for the

amounts claimed in the adversary action.  (*Id.*, Ex. 4 ¶ 8.)  With respect to the second

objection, which is the one at issue on appeal, the Trustee explained:

> The Support Services Agreement expressly provides that Polaroid . . . was
> obligated to forward only those payments actually received from Target,
> and that [PNY] would bear all responsibility for actions taken by, or
> disputes with Target.  In other words, there was no obligation to pay [PNY]

---

[3] The Trustee contends that these discovery requests were served in violation of a stay on
all discovery in adversary proceedings entered by the Bankruptcy Court in a case management
order.  (Bankr. Transmittal I, Ex. 3 at 8, Mar. 18, 2014, Docket No. 4.)  The Court need not,
however, decide whether these discovery requests were proper in the adversary proceeding in
order to resolve the issues currently before the Court.

unless and until Target first paid.  Yet, [PNY] includes in its filed claim $575,123.97 that expressly related to 'Deductions' for which [PNY] is not entitled to be paid.  At most, only $111,713.60 of [PNY]'s claim relates to amounts paid by Target, which arguably could be due to [PNY], subject to [PNY]'s ability to prove its claim.

(*Id.*, Ex. 4 ¶ 10 (citation omitted).)

PNY responded to the Trustee's objections in a written submission.  (Bankr. Transmittal I, Ex. 6.)  With respect to the Trustee's objection based on the amount of the claim, PNY stated that

PNY set forth the basis for the amount of the claim in its proofs of claim. The Trustee contests the amount that is due to Polaroid.  This Objection will need to be resolved through discovery.  As noted above, the parties contemplate taking discovery, and because factual issues are present, this objection will likely need to be determined through an evidentiary hearing.

(*Id.*, Ex. 6 ¶ 9.)

The Bankruptcy Court scheduled a preliminary hearing on the Trustee's claim objections for October 2011, and the Counsel for the Trustee sent the following email to PNY's counsel:

[H]ere is what I learned from my call.  First, Judge Kishel will not agree to cancel the preliminary hearing in favor of the ultimate evidentiary hearing, notwithstanding that both sides agree an evidentiary hearing is likely necessary.  Rather, Judge Kishel will insist on holding the preliminary hearing and then making the determination that an evidentiary hearing is warranted. . . . Judge Kishel's calendar clerk did advise that the parties could appear at the preliminary hearing by telephone, so as to avoid the expense of you traveling to Minnesota for what likely will be a short hearing.

(App. at 211.)

## IV.    OCTOBER 2011 HEARING

On October 18, 2011, the Bankruptcy Court held a preliminary hearing on the Trustee's claim objections, at which PNY's attorney appeared by phone, with local counsel appearing in person.  (Bankr. Tr. ("Tr.") at 4, Mar. 18, 2014, Docket No. 5.)  At the hearing the Trustee argued the merits of his claim objections.  With respect to whether Polaroid owed PNY money under the SSA, the Trustee argued that PNY could not recover the $575,123.97 of deductions claimed because that amount represented "deductions taken by Target from amounts otherwise payable to the debtor to eventually be forwarded to PNY."  (Tr. at 11.)  Specifically, the Trustee argued that under the plain language of the SSA, Polaroid "was never obligated to PNY unless it first received payment from Target."  (Tr. at 12.)  Then, relying on the provisions of the SSA which specify that PNY is solely responsible for a number of things, including liabilities and claims relating to charge backs, price protections and discounts, the Trustee argued that

> PNY exclusively bore all risks associated with Target not paying or taking deductions related to PNY's goods.  The Debtor simply was never at risk or had any obligation related to these non-payments or deductions . . . . If you look at [PNY]'s proof of claim, it expressly says that approximately $575,000.00 of the $686,000.00 proof of claim relate to - - it's under the heading of deductions that by definition Target never paid to the Debtor and which the Debtor then never became obligated to pay to PNY and for which PNY agreed to bear sole responsibility for non-payment.

(Tr. at 13.)    Therefore, the Trustee concluded that PNY was only entitled to the $111,713.60 portion of its claim related to unpaid invoices.  (Tr. at 14-15.)  The Trustee also asserted to the Bankruptcy Court that PNY had not "conducted any discovery in this claim objection and so you have got the facts before you that are unrebutted."  (Tr. at 22.)

- 8 -

Counsel for PNY began his argument by explaining that "[i]t was my understanding, quite frankly, that today was going to be more of a status conference based on my conversations with [counsel for the Trustee], which is why I asked to appear telephonically." (Tr. at 23.)  PNY also explained that it had served discovery requests on the Trustee in the adversary proceeding, albeit not in the claim objection portion of the bankruptcy proceeding, and that those requests had not been responded to, and that it was therefore incorrect to construe the facts in the record as unrebutted.  (Tr. at 24.)  With respect to the information it sought in those discovery requests, PNY stated:

> The only information that we have is the monies that were turned over from Polaroid to PNY.  We don't know whether Target paid Polaroid more funds that were not turned over.  I mean it's quite possible, Your Honor, that funds were turned over post-petition that we were just not made aware of, so some of those items that were discussed as deductions, the price protection and the rebate items and the short shipment items may very well have been corrected in the post-petition period and PNY simply hasn't received any information with respect to those amounts despite the fact that we have asked for discovery on that issue.

(Tr. at 25.)  Therefore, PNY indicated that it believed resolution of the amount of the claim was premature, and that although its proof of claim included "a breakdown of the amounts that we believe are owed" it needed more information from Polaroid before the issue could be resolved.  (Tr. at 25-26.)  PNY ultimately agreed that the discovery it would need would be limited in scope to "the relationship between Polaroid and Target and the invoices that were received and the payments that were received or the invoices that were sent." (Tr. at 39-40.)

On rebuttal, counsel for the Trustee explained that the discovery requests served in the adversary proceeding were improper under the court's case management order and

that the substantive issues raised in the claim objection were "squarely presented," and therefore ripe for decision. (Tr. at 29-31.) As to PNY's argument that Target may have submitted payments in the post-petition period with respect to the deductions claimed in PNY's claim, the Trustee indicated "I guess I don't know what to make of that. It's a novel theory. I am not aware of any payments that Target would made or that - - why it would make payments post-petition on ancient invoices." (Tr. at 33.)

## V.   CLAIMS ORDER

On December 30, 2013, the Bankruptcy Court issued its order on the Trustee's claim objections ("the Claims Order"), concluding that PNY was not entitled to any of the $575,123.97 it claimed as amounts related to deductions in its proof of claim. (Bankr. Transmittal I, Ex. 7 ("Claims Order").)

The Bankruptcy Court began by explaining that at the October 2011 hearing it had taken the Trustee's objections under advisement "first to consider the posture of the matter, i.e., whether the Trustee's objection was amenable to decision now as a matter of law; and then to address the merits if the Trustee was correct." (Claims Order at 3.) The court explained:

> Ultimately, there was no warrant for PNY's "assumption" that the hearing would be treated as preliminary and directed to scheduling alone. The Trustee had not noticed it as such. There is nothing in the record to reflect that the court either considered or ordered such in advance of the hearing. On that account and others, the hearing involved an unnecessary brushfire scramble by the parties to position themselves procedurally to their best advantage on the merits.

(*Id.* at 8-9.)   But the court concluded that "the parties can now be aligned on the full merits" based on the allocations of the burdens of proof for claim objections and the rules governing summary judgment, and went on to consider the propriety of summary judgment.

Under the summary judgment standard, the Bankruptcy Court looked first to whether PNY's request for discovery at the October 2011 hearing counseled against a ruling on the merits, explaining that "[a] respondent that believes 'it cannot present facts essential to justify its opposition' has a specific procedural onus, to justify a grant of leave to take further discovery before a request for summary judgment is submitted.   It must show 'specified reasons' why it cannot do so, by affidavit or declaration."   (*Id.* at 10-11 (quoting Fed. R. Civ. P. 56(d).)   The court concluded that PNY was not entitled to discovery prior to a ruling on the merits of the Trustee's objections because:

> The reason is that PNY had the ability to generate enough evidence to bolster a liquidation of its claims in an amount greater than that maintained by the Trustee, through **its own means and from its own records**, if any such evidence was extant.   It was incumbent on PNY to produce that evidence from its own sources first, to justify any request to take further discovery from the bankruptcy estates to buttress its position.

(*Id.* at 11 (emphasis in original).)

The court noted that PNY's request for discovery was based on its contention that "additional payments may have come in from the Target Corporation to the Polaroid enterprise, after the bankruptcy filings, that were not tallied into the Trustee's presentation."   (*Id.*)   The court, however, reasoned that "the notion of additional payments having been made to the Polaroid enterprise **but unknown to PNY** makes no

sense, under the structure of the parties' agreement in the only way it could have been administered." (*Id.* (emphasis in original).)   The Bankruptcy Court then opined that "[o]ne can think of at least two ways that further payments could have come in from the Target Corporation.  PNY would have been involved deeply in its own right in both of them." (*Id.*)

The Bankruptcy Court explained that the first way would have been "a further disbursement made to rectify part or all of the chargebacks itemized in the proof of claim, on some sort of corrective action that directly addressed their merits." (*Id.* at 12.)  The court reasoned that such action "is not likely to have occurred" given the nature of the charges and typical retail finances and because "one could not see the Target Corporation loosening the purse strings to undo its imposition." (*Id.*)  The court went on to explain that even if such corrective action had been taken by which Target sent money to Polaroid, "PNY and only PNY would have been involved in the events that brought about the adjustment" because under the SSA PNY bore the risk of charge backs and other similar deductions and therefore "[t]he Polaroid enterprise would have had nothing to do with this part of the transactional sequence." (*Id.*)  Consequently, the Bankruptcy Court concluded that discovery would have been futile because the bankruptcy estates of Polaroid would have no relevant evidence in their possession related to PNY's $575,123.97 claim.

The Bankruptcy Court explained that the second situation wherein Target may have sent additional money to Polaroid that had not been sent on to PNY would have been for "post-petition shipments of merchandise from PNY, invoiced and booked

pursuant to the SSA but not accounted for on the proof of claim." (*Id.* at 13.)  The court

concluded that discovery with respect to this situation would also be futile because it

relied on "[t]he insinuation . . . that the Trustee was less than candid, or at least less than

thorough, in reviewing the Debtors' post-petition operations toward fully disclosing and

justifying PNY's account for a final determination and allowance of its claim." (*Id.*)

Because the Trustee was bound by the duties under Federal Rule of Civil Procedure 11

and the Minnesota Rules of Professional Responsibility, the court concluded that the

Trustee's submissions were entitled to "deference," explaining:

> Absent facial defect, his objection may be assumed to be the product of a
> fair, neutral, and thorough review, and his presentation to have shown all
> there was regarding PNY's claim that could be found in the Debtors' books
> and records.  If PNY had something to controvert the Trustee's content and
> to challenge that assumption, i.e., evidence of its own further post-petition
> shipments to the Target Corporation for which it was not credited, it was
> PNY's burden to produce it.

(*Id.* at 13-14.)  Therefore, the Bankruptcy Court concluded that "PNY simply has not

articulated a reason why the estates would have relevant evidence for discovery at PNY's

instance, when PNY should already have the more basic and probative evidence to

support its conjectured adjustments." (*Id.* at 15.)

Having determined that no discovery or further briefing was required, the

Bankruptcy Court addressed the merits of the Trustee's objection to PNY's proof of

claim.  The court explained that with respect to the $575,123.97 sought for deductions –

including advertisements, miscellaneous, price protection, price variance, return

difference, rebate, short shipment, and violation – all of these costs fell "under the

laundry-list of 'situations, risks, liabilities, and claim[s]' for which PNY was to be solely

responsible to the Target Corporation under the SSA." (*Id.* at 16.) Specifically, the court reasoned:

> Simply stated, these chargeback-related debts – most likely the basis for the Polaroid enterprise's reduction of earlier pass-through payments to PNY – were entirely PNY's problem when initially assessed by the Target Corporation. They remain so. Under the SSA, the Polaroid enterprise had no obligation to make PNY whole for them, absent reversal of the chargebacks and compensatory payment by the Target Corporation.

(*Id.* at 17.) Therefore, the court concluded "PNY did not produce any evidence to controvert the making of the chargebacks, their nature, or their origin in transitions for which PNY was to bear full risk and responsibility, as against the Polaroid enterprise. As a result, the Trustee's case took the field. PNY's claim must be disallowed to the extent of $575,123.97." (*Id.*) The court did allow, however, PNY's claim for unpaid invoices in the amount of $111,713.60, finding that the Trustee had failed to rebut PNY's prima facie showing that the claim in that amount was valid. (*Id.* at 17-18.)[4]

## VI. MOTION FOR RECONSIDERATION

On January 13, 2014, PNY brought a motion seeking reconsideration of the Claims Order. (Bankr. Transmittal I, Ex. 8.) PNY argued that the Bankruptcy Court had

---

[4] On December 30, 2013, the Bankruptcy Court also issued a report and recommendation on the cross motions for summary judgment in the adversary proceeding. (Bankr. Transmittal III, Ex. 2, Mar. 18, 2014, Docket No. 8.) In the report and recommendation the Bankruptcy Court recommended that summary judgment be granted in the Trustee's favor on the breach of contract claim in the amount of $472,946.93. (*Id.*, Ex. 2 at 23.) The Bankruptcy Court also recommended that PNY be entitled to offset against that amount its allowed claims in the bankruptcy proceeding – or $111,713.60. (*Id.*) PNY objected to the report and recommendation, but both parties later consented to mediation and the case was transferred by Judge Patrick J. Schiltz to the Northern District of Iowa for mediation. (*Stoebner v. PNY Techs., Inc.*, Civil Case No. 14-137 (D. Minn.), Order, Sept. 5, 2014, Docket No. 12.)

erred in determining that PNY was in possession of all relevant documents bearing on amounts that it might be owed from Polaroid under the SSA, explaining:

> Given the relationship between the parties (PNY, Polaroid and Target) and the structure of the SSA pursuant to which Polaroid invoiced Target and Target paid funds directly to Polaroid, PNY had no ability to generate evidence to bolster its arguments regarding the amount of its claim from its own records. The only information that was in PNY's possession is payment information that was received from Polaroid. Polaroid, however, was receiving the payments **directly** from Target and then was supposed to be remitting a portion of those payments to PNY. Further, Polaroid had possession of the invoices to Target and its internal records would reflect the allocation of Target's payments to those invoices on account of products shipped by PNY.

(*Id.*, Ex. 8 at 5 (emphasis in original) (footnote omitted).)  PNY therefore requested that the Bankruptcy Court vacate the Claims Order and allow discovery to proceed.  (*Id.*, Ex. 8 at 8-9, 13.)

On February 11, 2014, the Bankruptcy Court held a hearing on the motion for reconsideration.  (Bankr. Tr. ("Reconsideration Tr."), Mar. 18, 2014, Docket No. 6.)  At the hearing, PNY acknowledged that under the language of the SSA it bore the burden of charge backs and other deductions, but submitted that information about those charge backs was in Polaroid's possession.  (*Id.* at 18-19.)  In response to this argument, the Bankruptcy Court acknowledged that in the event of charge backs or deductions, the SSA "doesn't make it clear what's to happen after that, whether [PNY] then is to deal with Target directly or not."  (*Id.* at 19.)

The Bankruptcy Court ultimately denied the motion for reconsideration.  (*Id.* at 34-35.)  The court explained that PNY did not have a right to recover the amount claimed in deductions based solely on the face of its proof of claim, explaining "[t]he filing of that

proof of claim with the content on its face I think can really only be construed as a request to be made whole for the charge backs. . . . Which Polaroid had no obligation to do under the Support Services Agreement." (*Id.* at 30, 34.) Specifically, the court explained:

> I made my determination off the face of the proof of claim and the substantive position that was taken on it. There was a demand based upon an asserted right to payment as to which there really was none if the claimant was acknowledging that these holdbacks have been made.
>
> . . . .
>
> I can't answer the question of where [PNY's] recourse lay under the circumstances, but the face of the proof of claim acknowledged holdbacks having been made as to which the responsible debtor . . . had no obligation to make whole.

(Tr. at 34-35; *see also* Bankr. Transmittal I, Ex. 10.)

# ANALYSIS

## I.   STANDARD OF REVIEW

In bankruptcy proceedings, the Court sits as an appellate court and applies the same standard of review as the court of appeals. *Reynolds v. Pa. Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 531 (8th Cir. 2005). The Court reviews the Bankruptcy Court's grant of summary judgment *de novo*. *Banks v. Kondaur Capital Corp. (In re Banks)*, 457 B.R. 9, 10 (B.A.P 8th Cir. 2011). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), applicable pursuant to Fed. R. Bankr. P. 7056. A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a

reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.    NATURE OF CLAIM OBJECTIONS

In order to make clear the appropriate application of the summary judgment standard to the issues raised in the present appeal, the Court briefly addresses the relevant burdens of proof and procedural considerations that govern a proof of claim in bankruptcy proceedings.

A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). If a proof of claim is not objected to, it "is deemed allowed." 11 U.S.C. § 502(a). To rebut the "presumptive

validity" of a claim an objector bears the burden of producing "substantial evidence." *Brown v. IRS (In re Brown)*, 82 F.3d 801, 805 (8th Cir. 1996) (internal quotation marks omitted), *abrogated on other grounds by Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000).  If the objector produces such evidence "the ultimate burden of persuasion" shifts back to the claimant "to establish its entitlement to the claims."  *In re Dove-Nation*, 318 B.R. at 152; *see also In re SendMyGift.com, Inc.*, 280 B.R. 667, 674 (Bankr. D. Minn. 2002).  A claim objection is treated as a contested matter under the Bankruptcy Rules. *See* Fed. R. Bankr. P. 9014(a).  As contested matters, claim objections are subject to standard discovery procedures and disposition on summary judgment.  *See* Fed. R. Bankr. P. 9014(c).  With this burden-shifting framework in mind, the Court turns to the issues raised by PNY on appeal.

### III.    PNY'S REQUEST FOR DISCOVERY

PNY first argues that the Bankruptcy Court erred in refusing to allow PNY to conduct discovery prior to the entry of summary judgment.  The Court reviews for abuse of discretion the Bankruptcy Court's decision that the Trustee's objections to the proof of claim were ripe for summary judgment in the absence of discovery.  *Robinson v. Terex Corp.*, 439 F.3d 465, 466-67 (8th Cir. 2006).  A court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment."

*United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (internal quotation marks omitted).

### A.        Standards Governing Discovery Prior to Summary Judgment

In order for a court to accurately make a summary judgment determination the parties must "have developed the record through discovery and there is an expectation that the parties have had the opportunity to produce evidence supporting their claims and defenses." *In re Retek, Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 701 (D. Minn. 2009). "Although discovery does not have to be completed before a district court can grant summary judgment, 'summary judgment is proper only after the nonmovant has had adequate time for discovery.'" *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quoting *In re TMJ Litig.*, 113 F.3d 1484, 1490 (8th Cir. 1997)).

Federal Rule of Civil Procedure 56(d) (formerly 56(f)) "allows a party opposing summary judgment to request [that] the court postpone a decision until adequate discovery is completed." *Id.*[5] Rule 56(d) provides:

---

[5] The Court assumes, without deciding, for purposes of this appeal that a party must comply with the procedure for requesting delay of a ruling on summary judgment in Rule 56(d) even where, as here, the ruling on summary judgment was made sua sponte by the court without a motion from the opposing party. It is certainly possible that a party's obligation to alert the court to outstanding discovery issues that should preclude or postpone summary judgment is reduced where that party is not aware that summary judgment is, in fact, being considered. Because the Court concludes, however, that PNY adequately complied with the requirements of Rule 56(d), it need not resolve what lesser burden PNY might have needed to satisfy at the October 18, 2011 hearing in order to postpone a ruling on summary judgment.

> **When Facts Are Unavailable to the Nonmovant.**  If a nonmovant shows
> by affidavit or declaration that, for specified reasons, it cannot present facts
> essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Under Rule 56(d) a "party opposing summary judgment is required to file an affidavit [or declaration] with the district court showing what specific facts further discovery might uncover."  *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 762 (8th Cir. 1999).[6]  It is not enough for a party seeking a continuance to merely list facts that might be unearthed in further discovery.  *Ray*, 609 F.3d at 923.  Rather, the nonmovant must "articulate how those facts [are] relevant 'to rebut the movant's showing of the absence of a genuine issue of fact.'"  *Id.* (quoting *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993)).

In reviewing the denial of a request for discovery courts have considered a number of factors, including:

---

[6] The Court notes that at least some courts have concluded that under Rule 56(d) "an affidavit or declaration is not strictly required, and the nonmovant may simply indicate to the court its need for additional discovery by some equivalent, preferably written statement." *Berger v. Nat'l Flood Ins. Program*, Civ. No. 12-2158, 2013 WL 499310, at *6 (E.D. La. Feb. 7, 2013) (citing *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266-67 (5th Cir. 1991)).  The Eighth Circuit has not decided "whether strict adherence to Rule 56([d])'s affidavit requirement is necessary to preserve the argument on appeal that summary judgment was prematurely granted." *In re TMJ Litig.*, 113 F.3d at 1492 n.10.  Here, the Bankruptcy Court did not rely on PNY's lack of an affidavit in denying its request for discovery, nor has the Trustee argued that PNY cannot raise its Rule 56(d) argument on appeal before this Court, having not filed an affidavit with the Bankruptcy Court.  Accordingly, the Court will consider PNY's appeal even though it did not strictly comply with the affidavit or declaration requirement of Rule 56(d) before the Bankruptcy Court.

(1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (internal quotation marks omitted).  Courts have also explained that, as a general matter, motions for additional discovery should be granted if the party seeking additional discovery "(i) requested extended discovery prior to the court's ruling on summary judgment; (ii) placed the district court on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to the district court with reasonable specificity how the requested discovery pertained to the pending motion."  *Winfrey v. San Jacinto Cnty.*, 481 F. App'x 969, 982 (5th Cir. 2012) (internal quotation marks omitted).

### B.      Bankruptcy Court's Denial of Discovery

The Court concludes that the Bankruptcy Court abused its discretion when it declined to allow PNY any discovery prior to ruling on the merits of Trustee's claim objections.  *See CenTra, Inc.*, 538 F.3d at 420 ("Typically, when the parties have no opportunity for discovery, denying the Rule 56([d]) motion and ruling on a summary judgment motion is likely to be an abuse of discretion."); *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) (concluding that the district court abused its discretion in denying "the plaintiffs' motion to hold the summary judgment motion in abeyance pending the completion of discovery" because "the plaintiffs never had the opportunity to examine all of the documents they had requested or to depose the city officials whose

affidavits were offered in support of the motion for summary judgment"). Specifically, the Court concludes that the majority of the relevant factors weighed in favor of granting PNY's request for discovery. PNY had not been provided an opportunity to engage in any discovery in the bankruptcy proceeding, the Trustee had been nonresponsive to discovery requests served in a related proceeding that had bearing on the issues presented in the objections, and PNY had presented the Bankruptcy Court with a request for specific discovery that PNY believed would create material issues of fact with respect to its claim and the pending objections. *See Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011) (finding that where "the district court permitted no discovery whatsoever" the factors relevant to granting a Rule 56(d) motion largely weighed in the nonmoving party's favor).

The Bankruptcy Court based its decision not to allow discovery primarily on its conclusion that discovery was not necessary because all relevant documents bearing on PNY's proof of claim would have been in PNY's possession. Although such a conclusion may provide an appropriate basis for denial of discovery where that conclusion is made as a matter of law or based on facts that are not disputed by the parties, the Court finds that this conclusion was in error because it was based on fact finding by the Bankruptcy Court and involved the weighing of inappropriate factors. The Bankruptcy Court provided several reasons for this conclusion, and the Court will briefly address each in turn.

First, the Bankruptcy Court concluded that it was unlikely that Target would have made further disbursements to rectify any of the charges reflected in the $575,123.97

deductions portion of PNY's proof of claim.   But this conclusion was based on the Bankruptcy Court's own interpretation of what typically happens in the practice of large retailers, and was not based on evidence presented by the Trustee, or information regarding how these disbursements actually operated with respect to the SSA.   The Bankruptcy Court further explained that even if Target had rectified some of the charges "[t]he Polaroid enterprise would have had nothing to do with this part of the transactional sequence" because under the SSA, PNY bore the risk of charge backs and other similar deductions.   (Claims Order at 12.)   The fact that PNY bore the risks of such charges, however, does not necessarily compel the conclusion that PNY would be in possession of the evidence reflecting that those charges had been rectified.   For example, although the Bankruptcy Court opined that because PNY would likely have been the entity triggering rectification of such charges (because it bore the risk of such charges in the SSA) and therefore would have documentation regarding rectification of such charges, it is just as easy to imagine a situation in which Target rectified certain charges on its own, or in which PNY initially sought to have certain charges rectified, and Target later paid those fees to Polaroid, without separately notifying PNY.   As acknowledged by the Bankruptcy Judge at the February 11, 2014 hearing, the SSA itself "doesn't make it clear" whether PNY was to deal directly with Target for purposes of disputing and recovering such charges, or whether Target might remit corrective amounts directly to Polaroid. (Reconsideration Tr. at 19.)   Therefore, the Bankruptcy Court abused its discretion in assuming that documents would be in PNY's possession when the relevant contract did not compel that conclusion as a matter of law, there was no evidence in the record

regarding how corrected deductions were rectified in the performance of the SSA, and PNY disputed that it had the relevant information.

Second, the Bankruptcy Court concluded that discovery was unnecessary because the Trustee, in submitting his objections, was bound by Rule 11 and the Minnesota Rules of Professional Responsibility, and therefore the Trustee's representation that he had reviewed Polaroid's books and records and found that they did not support the amount of PNY's claim was entitled to deference.  Such weighing of credibility is inappropriate at the summary judgment stage – even where discovery has occurred – and does not provide a basis for denying discovery.  *See Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1337-38 (Fed. Cir. 2008) ("The district court's refusal to allow depositions cannot be defended on the ground that the Janssen and Lang declarations were credible . . . . [T]he district court should not have treated the declarations of Janssen and Lang as truthful.  Instead, the district court should have allowed Bancorp a reasonable opportunity for discovery . . . .").  Indeed, were this not the case, courts could routinely grant summary judgment where no discovery had occurred, based solely on the declaration of an attorney for one party – as all attorneys that practice before the federal courts are bound by the ethical obligations of Rule 11 and the Minnesota Rules of Professional Conduct.  Additionally, the Trustee actually had very little to say – one way or the other – about PNY's theory that Target had reimbursed Polaroid for a variety of the charges claimed by PNY.  Specifically, when asked to address that theory at the October 2011 hearing the Trustee replied "I guess I don't know what to make of that.  It's a novel theory.  I am not aware of any payments that Target would made or that - - why it would

make payments post-petition on ancient invoices." (Tr. at 33.)  This statement suggests that in preparing the objections to PNY's claim the Trustee was actually not concerned with, and specifically looking for, records indicating that Target rectified certain charges assessed on earlier invoices.  Therefore, even if it were proper to defer to the Trustee's declaration, there was no development in the record before the Bankruptcy Court regarding the issue of post-petition payments by Target.  *See Winfrey*, 481 F. App'x at 983 (concluding that a district court abused its discretion when it failed to allow further discovery where "[t]he record as developed at summary judgment inadequately spoke to that issue").

Finally, the Court notes that to the extent the Claims Order can be construed as finding that PNY had failed to meet its burden under Rule 56(d) of alerting the court to the specific discovery it sought and showing that evidence creating a material issue of fact was likely to be produced during that discovery, the Court would also find this conclusion to be an abuse of discretion.  Courts have concluded that "[w]hen, as here, there has been no adequate initial opportunity for discovery, a strict showing of necessity and diligence that is otherwise required for a Rule 56([d]) request for additional discovery, does not apply."  *Metro. Life Ins. Co.*, 527 F.3d at 1337 (citation omitted).  PNY articulated in its papers opposing the Trustee's objections and at the October 2011 hearing that it needed to obtain discovery of documents relating to transactions between Target and Polaroid regarding its proof of claim.  PNY also explained its theory behind its proof of claim and how this discovery would bear on that claim.  Specifically, that Target rectified certain charges, and sent the money previously deducted from invoices to

Polaroid, but Polaroid never forwarded that money to PNY.  Additionally, although no discovery was pending in the bankruptcy proceeding itself, PNY explicitly alerted the Bankruptcy Court to specific discovery requests that were pending in the related adversary proceeding that would bear directly on PNY's proof of claim.  *See United States v. Real Prop. & Improvements Located at 2366 San Pablo Avenue, Berkeley, Cal.*, Civ. No. 13-2027, 2014 WL 3704041, at *3 (N.D. Cal. July 24, 2014) ("[B]ecause discovery requests are outstanding in this action, this Court is cautious to deny the Rule 56(d) motion.").  Therefore, the Court concludes that the Bankruptcy Court abused its discretion in finding PNY's discovery requests insufficiently specific to invoke the protections of Rule 56(d).

Finally, the Court concludes that the Bankruptcy Court's failure to allow discovery impacted its determination on the merits.  Specifically, with respect to the disallowance of the $575,123.97 claimed in deductions, the Bankruptcy Court explained:

> [T]hese chargeback-related debts – most likely the basis for the Polaroid enterprise's reduction of earlier pass-through payments to PNY – were entirely PNY's problem when initially assessed by the Target Corporation. They remain so.  Under the SSA, the Polaroid enterprise had no obligation to make PNY whole for them, **absent reversal of the chargebacks and compensatory payment by the Target Corporation**.

(Claims Order at 17 (emphasis added).)  Whether such reversal of the charge backs had occurred was precisely the issue on which PNY sought discovery.  Accordingly, had PNY been allowed to conduct the requested discovery it is possible that PNY could have, at the very least, raised a material issue of fact regarding the reversal of the charge

backs.[7]  Therefore, the Bankruptcy Court abused its discretion in preventing PNY from seeking such discovery.

In reaching this conclusion, this Order should not be read to suggest in any way that PNY will ultimately succeed in showing that Target repaid $575,123.97 to Polaroid that it had previously deducted from invoices.  Indeed, if PNY is unable to present evidence showing such reversals, it is undisputed that under the SSA, PNY bears the responsibility for those charges and cannot recover them from Polaroid.  Instead, the Court merely concludes that "the bankruptcy court's granting of summary judgment under these circumstances" without allowing an opportunity for any discovery "could have impeded 'informed resolution of fact-specific disputes.'"  *See Soule v. High Rock Holding, LLC*, Civ. No. 12-671, 2014 WL 3783936, at *9 (D. Nev. July 30, 2014) (quoting *Burlington N. Santa Fe. R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003)).

The Court therefore concludes that the Claims Order must be vacated and will remand to allow PNY to conduct discovery with respect to its entitlement to the

---

[7] In the hearing regarding PNY's motion for reconsideration the Bankruptcy Court seemed to suggest that its decision at the summary judgment stage that discovery was unnecessary was actually because PNY's proof of claim, on its face, was requesting to be made whole for charge backs – which the SSA does not allow.  (Tr. at 30, 34.)  The Bankruptcy Rules, however, contemplate that sometimes a party will file a proof of claim based on amounts that it believes are owed to it – but will ultimately need discovery to obtain the evidence necessary to satisfy its burden of proof with respect to that claim.  *See* Fed. R. Bankr. P. 9014(c) (allowing for discovery with respect to objections to a proof of claim).  Here, the Court concludes that it is permissible for PNY to assert a claim based on an amount that it believes Target has repaid to Polaroid, after the amounts were originally deducted from the invoices.

$575,123.97 sought in its proof of claim.[8]  The Court notes, however, that such discovery

will be limited to the document production requests that PNY has cited in its brief before

this Court, as these are the materials that PNY indicated would be probative on its proof

of claim.  (*See* Appellant's Brief at 9-10 (citing App. at 180-81).)[9]


## ORDER

Based on the foregoing, and all the files, records, and proceedings herein the Court

**VACATES** the Order of the Bankruptcy Court dated December 30, 2013 [Docket No. 4,

Attachment 7] and **REMANDS** for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 19, 2015                          s/ John R. Tunheim
at Minneapolis, Minnesota.                      _____
                                                JOHN R. TUNHEIM
                                                United States District Judge

---

[8] PNY has not, however, provided a basis for allowing additional discovery with respect
to the $111,713.69 sought in invoices, and therefore may not conduct discovery to ascertain if
any additional invoices would entitle PNY to more than the $111,713.69 relief it claims.

[9] Because the Court has determined that the Bankruptcy Court abused its discretion in
declining to allow PNY to pursue discovery, and will remand on this basis, it need not address
PNY's additional arguments on appeal – that the Bankruptcy Court erred in granting summary
judgment sua sponte and in denying PNY's motion for reconsideration.